UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10829-GAO

PAMELA S. MCKENZIE,
Plaintiff,

v.

MICHAEL ASTRUE,
Commissioner of Social Security,
Defendant.

OPINION AND ORDER
September 22, 2011

O'TOOLE, D.J.

## I.   Introduction

The plaintiff, Pamela McKenzie, applied for Supplemental Security Income ("SSI") benefits on January 25, 2007, alleging that her mental and physical disabilities had prevented her from working since July 5, 1999. (Administrative Tr. at 7 [hereinafter R.].) On May 15, 2007, the Social Security Administration determined that she was not entitled to SSI benefits. (Id. at 64.) On July 14, 2008, a Federal Reviewing Official determined that the plaintiff was not disabled and was not entitled to SSI benefits. (Id. at 56.) An Administrative Law Judge ("ALJ") held a hearing on November 12, 2009, and he determined that the plaintiff was not disabled from January 25, 2007, the date of her application, through December 7, 2009. (Id. at 7-20.) The Decision Review Board selected the case for review, and it confirmed the ALJ's determination. (Id. at 1-3.) The plaintiff seeks review of these decisions.

## II.   Standard of Review

The Social Security Act states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

"Substantial evidence means 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson, 447 F.3d 68, 72 (1st Cir. 2006) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." E.g., Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004).

Credibility issues and the making of permissible inferences based on evidentiary facts are the prime responsibility of the Commissioner. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts." Id.

**III.    Discussion**

The plaintiff has a lengthy medical history, which is recounted in detail in the parties' memoranda, particularly the defendant's. It is not necessary to rehearse the details here.

The plaintiff makes a number of arguments in support of her motion to reverse the Commissioner's decision, but none is persuasive.

First, she contends that the ALJ erred in his failure to take account of a diagnosis of fibromyalgia. She argues that Dr. Feoktistov made such a diagnosis. In fact, Dr. Feoktistov said that the plaintiff's signs and symptoms were "strongly suggestive" of fibromyalgia, but he also noted that she had symptoms of hypermobility syndrome. (R. at 496.) He further speculated that her symptoms might reflect "hepatitis C associated arthralgias." (Id.) It is clear that a definite

diagnosis of fibromyalgia was not made by Dr. Feoktistov.[1] The ALJ did not err in failing to consider a diagnosis that was not made. Second, the plaintiff contends that the ALJ erred in not including cirrhosis as a medically determinable severe impairment. Again, she overreads the record.

A liver biopsy was taken on April 28, 2006, and it indicated that the plaintiff had bridging fibrosis and inflammation. (R. 201-202.) The plaintiff relies on this fact as sufficient to demonstrate that cirrhosis should have been included as a severe impairment by the ALJ. This argument fails for several different reasons. First, the plaintiff has not demonstrated that fibrosis and cirrhosis are the same conditions. See Stedman's Medical Dictionary, 355, 671 (27th ed. 2000). Secondly, even if the existence of fibrosis in the liver by itself would justify a diagnosis of cirrhosis, the plaintiff did not show that her ability to work has been significantly limited by this condition. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (finding that the severity regulation requires the plaintiff to demonstrate that she has an impairment or combination of impairments that significantly limits her ability to do most jobs). Simply pointing to a diagnosis of fibrosis – or cirrhosis, for that matter -- is not sufficient to prove that there has been a severe impairment. See Gillon v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 23 (1st Cir. 2002) (finding that the mere diagnosis of a condition is not sufficient evidence to prove that there is a severe impairment).

Third, the plaintiff objects that, contrary to the ALJ's findings, she was continuously under treatment for hepatitis C for a year. On the record, however, the ALJ was justified in concluding that the plaintiff was not continuously under treatment for hepatitis C for a year. For example, the record shows that, during an examination at the Sturdy Memorial Hospital on

[1] Furthermore, the plaintiff has not referred to any other doctors that gave even the slightest indication that she has fibromyalgia.

March 27, 2006, the plaintiff admitted that in 2000 she had been taking Rebetron for about five weeks but did not like the side effects so she stopped the treatment. (R. 183.) She apparently resumed treatment in mid-2006. (R. 16, 237.) It was the plaintiff's burden to establish the extent and duration of any disability from her hepatitis C or its treatment, and the ALJ could reasonably have concluded that the sparsity of the information in the record did not justify a conclusion in the plaintiff's favor.

Fourth, the plaintiff contends that the ALJ erred in finding that McKenzie's degenerative disc disease was not a severe impairment. Nevertheless, there is substantial evidence that supports the ALJ's finding.

A radiological exam done on July 3, 2007, showed evidence of "mild degenerative disease" at L5-S1. (R. at 470.) An MRI taken in 2009 indicated that there was "mild bulging of the intervertebral disc" at L5-S1, a "physiologic bulging of the intervertebral disc" at L4-L5, and "no disc bulge" at the L3-L4, L2-L3, L1-L2, and T12-L1 levels. (Id. at 887.) Clearly, there is evidence of some mild disc bulging in the record. However, as with other conditions, the plaintiff has not pointed to record evidence that would have given the ALJ the ability to assess the impact this condition had on her ability to work. See Bowen, 482 U.S. at 146.

Fifth, the plaintiff contends that the Court should accept a similar argument regarding left knee patella-femoral syndrome, migraine headaches, and carpal tunnel syndrome, but again she does not support her contention with citations to record evidence to show that the ALJ's refusal to draw the proposed conclusions was not justified on the record. Sixth, the plaintiff contends that the ALJ erred by failing to give her treating physician's opinion proper weight and by finding that his opinions were not supported by substantial evidence. The ALJ is not required to give greater weight to the opinions of treating physicians. Arroyo v. Sec'y of Health & Human

Servs., 932 F.2d 82, 89 (1st Cir. 1991). If the treating physician's opinion is inconsistent with other evidence in the record, the conflict should be resolved by the ALJ and not the courts. Rodriguez, 647 F.2d at 222.

This issue concerns the physical capacities evaluation forms filled out by McKenzie's treating physician, Dr. Ilyevsky, in which he opined that she could not perform the full range of sedentary work activity since she could not lift more than ten pounds, could not sit, stand, or walk for more than two hours in an eight-hour day, could not operate leg controls, could not perform postural actions, and could not be exposed to unprotected heights, moving machinery, or pulmonary irritants. He further opined that she could not work on a consistent basis.

On the contrary, the state agency consultant, Dr. Jones, concluded that the plaintiff could perform light exertional work activity, could remember usual work instructions, could concentrate sufficiently to carry out simple work tasks, could adapt to routine changes in simple work tasks, and could interact appropriately with others.

As the defendant has noted in his brief, Dr. Ilyevsky's summary opinions in the physical evaluation reports was inconsistent with his own treatment records over time, where he noted no acute distress and normal motion and sensation with pain controlled by medication. Clearly there are some inconsistencies between the treating physician's opinion and those of other doctors that examined the plaintiff. In this situation, it is the duty of the ALJ to evaluate the totality of evidence and come to a conclusion. See Rodriguez, 647 F.2d at 222. The ALJ concluded that the treating physician's opinions were not consistent with the record, and there was substantial evidence to support such a conclusion.

The same analysis can be applied to the plaintiff's contention that the ALJ erred when he found that Dr. Won's opinion was inconsistent with the record. In a mental residual function

capacity assessment, Dr. Won stated that the plaintiff would have difficulty sustaining prolonged concentration and would struggle interacting with others. These conclusions are not supported by Dr. Won's own treatment notes, however, or others at the south Bay Mental Health Center. In addition, Dr. Won's conclusions in the RFC assessment were different than those arrived at by other doctors. For example, Dr. Ilyevsky's notes point out that, in general, the plaintiff had no anxiety, depression, or significant mental abnormalities. Also, Dr. Ober observed that the plaintiff's intellectual functioning was in the average range, and that her insight and judgment were good. The ALJ has the authority to decide the manner in which to treat these inconsistencies of evidence. See Gannon, 360 F.3d at 213. Therefore, there was no error in the ALJ's decision to give no weight to Dr. Won's RFC opinions.

Seventh, the plaintiff contends that the ALJ did not correctly evaluate her subjective claims regarding the extent of the pain that her alleged disabilities cause her.

"In weighing the evidence and evaluating the [plaintiff's] credibility, the ALJ is entitled to consider the 'consistency and inherent probability of the testimony.'" Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 n.1 (1st Cir. 1987) (internal citations and quotations omitted). "If there are inconsistencies in the record, the ALJ may discount subjective complaints of pain." Id.

The ALJ noted that the plaintiff provided extensive testimony about her alleged pain and disabilities. For example, he mentioned that the plaintiff testified that she could only sit for forty-five to sixty minutes, could stand for only twenty minutes, could walk for only ten to twelve minutes, and could lift only eight pounds. He also noted that she reportedly uses a cane to help her walk, that she has difficulty tolerating stress and work pressure, and that she has problems

with her memory and with concentrating. Clearly the ALJ did not disregard the plaintiff's testimony.

The ALJ considered this evidence in conjunction with other evidence before he came to the conclusion that the plaintiff's impairments were not causing pain to the extent the plaintiff was alleging. The ALJ performed a thorough analysis of the x-rays, liver biopsies, hepatitis C treatment, MRIs, doctor reports, and statements that the plaintiff made to doctors. Some of this evidence contradicted the testimony of the plaintiff. For example, the ALJ noted that the plaintiff told Dr. Ober that she could do laundry, drive, clean the house, and take public transportation. Given the variability in the record as to this issue, the ALJ had the authority to evaluate the plaintiff's credibility and come to a conclusion regarding it. See Frustaglia, 829 F.2d at 195.

Eight, the plaintiff contends that the ALJ erred because he failed to find that her mental health symptoms met or equaled one of the listings in 20 C.F.R. Part. 404, Subpart P, Appendix 1. "The burden to demonstrate the existence of such an impairment rests with the [plaintiff]." Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793 (1st Cir. 1987). The plaintiff must demonstrate that her mental impairment results in at least two of the following conditions: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decomposition, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ found that the plaintiff's mental impairment did not result in at least two of the conditions listed above, and there was substantial evidence to support his finding. For example, Dr. Ober concluded that the plaintiff had no difficulty with concentration and that she was able to go food shopping, cook, drive, clean, use public transportation, and do the laundry. Similarly,

Dr. Hirsch found that the plaintiff was alert, her vocabulary skills were above average, her memory was good, and her cognitive skills were in the average range. He also found that the plaintiff was able to focus and address questions that were presented to her. Though the plaintiff has put forth some evidence that supports her contention that her impairment might satisfy some of the prerequisite conditions, she certainly has not satisfied her burden of proof, see Dudley, 816 F.2d at 793, and there is substantial evidence to the contrary.

The plaintiff's contention that the ALJ erred by not considering a combination of impairments as an argument for eligibility for SSI benefits can easily be disposed of. The ALJ's decision explicitly states that "[t]he [plaintiff's] mental impairments, considered singly and in *combination*, do not meet or medically equal the criteria of listings 12.04 or 12.06." (R. at 10.) Furthermore, the analysis that the ALJ provides does not separate the plaintiff's impairments for consideration but considers them in totality. For example, the ALJ considered a large part of the plaintiff's testimony as to her different impairments and the pain that they have cumulatively caused her before he came to his conclusion as to whether or not she was disabled. See id.

## IV. Conclusion

For the foregoing reasons, the Defendant's Motion to Affirm the Commissioner's Decision (dkt. no 16) is GRANTED. The decision of the ALJ is AFFIRMED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge